Christian, J.,
delivered the opinion of the court.
When this case was before us at the January term of this court, 1877, the court was unanimously of opinion, upon the record then presented, that the decree of the circuit court of Franklin county, rendered on the 30th day of May, 1872, requiring the administrators and heirs of Washington Dickinson to pay into the Franklin bank the two last instalments of the purchase money of the Hairston tract of land in the bill and proceedings mentioned, and, in default of such payment, directing a resale *465 of said tract of land,.was premature, and therefore erroneous. In the opinion then delivered by the court, (which is on file among our records and herein referred to), after referring to various orders and decrees and rules fully set forth in that opinion, this court declared and ■determined as follows: “The court is of opinion that the decree (of said circuit court) holding the purchaser responsible for the repayment of the two last instalments of the purchase money which he had paid to the receiver, in Confederate money, was premature and plainly erroneous. The said circuit com’t, before rendering any decree in the cause fixing liability upon the purchasers, should have recpiired the general receiver to be made a party to the petition for rehearing, and should have required him, as well as the purchasers, to answer said petition. And no decree ought to have been rendered in the cause declaring the liability of the purchaser or the general receiver until the inquiries directed by the decree of Octoner 21st, 1870, had been first made by the commissioner and reported by him to the court, and before answer made by the general receiver; this court being of opinion that in the state of the.pleadings .and in the then condition of the cause when the decree appealed from was rendered, it was impossible for the court below, or for this court, to determine with any degree of certainty whether the purchaser or the general receiver, or either of them, or in what proportion, can be held liable in a court of equity for the loss incurred, by the payment of the two last instalments of the purchase money in Confederate States treasury notes.” See pages ■(>', 7, 8 of former opinion.
In accordance with this opinion, the decree of the circuit court was reversed, and the cause remanded to be further proceeded in according to the principles therein deil ired.
*466 Upon a motion for a rehearing of the cause here, it is now shown to the court that the vei’y inquiries directed to be made by the decree of the court below, and which this court declared were necessary and proper to be made before any final decree, had in fact been made and, reported upon by the commssioner in the court below before the decree appealed from was rendered.
It so happened that the counsel who represented the appellant here was not his counsel in the court below. The report of the commissioner was left out of the copy sent to this court. Both the court and the counsel treated the case as presented in the record then before-us. It was only upon this motion to rehear the case that the whole record is now brought up; so that the case is now submitted by the counsel on both sides to be determined on its merits.
Among other inquiries directed by certain interlocutory decrees which the former record did not show had been responded to, was the following, entered on the-16th April, 1872:
“ It appearing that further inquiry as to facts pertinent to the issue, and not appearing in the record, should be made before a decision of any question involved in the case is decided, it is ordered that Commissioner Hugh Helson do inquire and report, as speedily as practicable, what was the value of Confederate treasury notes on 15th day of January, 1863, and on the 1st February, 1863, and also on 20th October, 1863, and also to what extent such notes were available at each of said dates, in the county of Franklin, according to the common usages of business, for the payment of debts payable in specie and well secured on real estate, or for the purchase of property or otherwise.”
The inquiry thus directed was in accordance with that required by this court in the case of Mills v. Corbin, *467 reported in 19 Gratt. p. 438, and was one proper and necessary to be made in order to a right determination of the rights of the parties. Commissioner Uelson reported (returning therewith depositions of certain witnesses), “ that in January and February, 1863, Confederate treasury notes were current in Franklin county for all the purposes of a circulating medium; that they were available at that time in the common usages of business for the payment of all debts and the purchase of all kinds of property, at prices but little, if any, advanced above the prices which had existed before the war. * * * In October, 1863, the value of Confederate notes had veiy materially depreciated, for the purposes of the purchase of property, property generally selling at four or five times its former value when paid for in such notes, but even at that time they were generally? available for the payment of all debts. New persons refused to take them in payment of any debt until February, 1864, when the project of curtailing the notes then in circulation and making a new issue first began to be talked about.”
Upon the coming in of this report, to which there was no exceptions, (and others made by this same commissioner not necessary to be noticed here), the court rendered the decree appealed from, in which it declared that receiver John S. Hale had no warrant or authority for collecting the amount of the two bonds which fell due on tire 15th day of August, 1861 and 1862, in Confederate treasury notes in the year 1863, at a time when the said notes were greatly depreciated in value with reference to the specie' standard, and when the depreciation of said notes was constantly increasing, and that the payments made to him byr the personal representative of Washington Dickinson, in said notes, wore not legal and valid; and after allowing as a credit on said two bonds *468 of only wliat had been paid out by the receiver to the parties entitled, and the interest in said bonds which had been transferred to Samuel Hale, Jr., tor the benefit of the receiver, John S. Hale, decreed and ordered that unless the balance should lie paid by the administrator and heirs of Washington Dickinson on or before the 1st day of October following, then the land should he resold at public auction by the court’s commissioner, to pay the balance of the purchase money.
I am of opinion that this decree is erroneous. It has often been remarked by all the judges of this court that it is impossible to lay down any general rule with respect to dealings of fiduciaries in Confederate money; but each case must be determined on its own peculiar facts and circumstances. I think upon the peculiar facts and circumstances of this case, the administrator and heirs of Washington Dickinson were discharged from all liability by the payment by Dickinson’s administrator to the receiver of.tlie court, John S. Hale, on the 15th of January and the 1st February, 1863.
Washington Dickinson was the purchaser at a judicial sale of the Hairston tract of land, on 15th August, 1859, for the sum of $13,600. Making the cash payment required of $300, he executed three bonds for $4,433.33 each, payable respectively on the 15th day of August, 1860, 1861 and 1862.
This sale was confirmed by the court in October, 1859, and the bonds were turned over for collection to John S. Hale, the general receiver of the court, and leave was given to Dickinson to pay before due, if he so desired, and deduction of interest was to be made in that event; and the receiver was directed to distribute such collections when made. Dickinson paid to the receiver the first bond when it became due, on 15th of August, 1860. He also paid on the second bond before it became due *469 the sum of $1,100.77. He died in July, 1862. Randolph Dickinson qualified as his administrator. A few months after his qualification, to-wit: in January, 1863, he paid to the receiver the amount in full due on the second bond, and in February, 1863, paid oft' the third bond, and took them both in. On the 20th of October, 1863, the receiver reported to the court that he had collected from Washington Dickinson in his lifetime and from his piersonal representative since his death, the whole amount of the purchase money for which the Hairston tract was sold. To this report there was no excepition, and on 21st October, 1863, the court rendered its decree, reciting that it apipeared to the satisfaction of the court that the entire purchase money had been paid; and confirming the collection of said bonds by its receiver, Hale, directed its commissioner, Hugh Kelson, to convey said land to the heirs at law of Washington Dickinson; which was accordingly done. It thus apipears that on that day, the 20th October, 1863, the whole transaction was closed, and the rights of the parties to the suit fixed and determined, and a title to the land conveyed to the heirs of the purchaser. Ko objection was then made from any quarter, or by any of the piarties, that the receiver or the administrator of the piurchaser had no right, the one to receive and the other to pay off these bonds in Confederate money. The court must have known, and the parties must have known, that this large amount, of upiwards of $9,000, was not piaid in gold, but must have of necessity been paid in the only circulating medium existing at that time in the county of Franklin or in this state—Confederate treasury notes. Knowing this, the parties made no exception, and the court confirmed the action of its receiver in collecting the money, and directed the title to the land to be conveyed to the piurchaser. Seven years afterwards, when Confederate *470 money had perished, and when the receiver (as it is alleged) has become insolvent, it is sought to hold the administrator and heirs liable for a loss which'they had no part in causing and no power to prevent. The administrator did nothing more than his duty in promptly paying oft- these bonds due from his intestate, and which he found (under a decree of a court of competent jurisdiction) had been placed'in the hands of the court’s receiver to collect. He (the administrator) could not know, and was in no way responsible for, what disposition or distribution the receiver wras to make of the fund. It was enough for him to know that the receiver was willing to take this money, and that the court would, as it did, confirm the action of the receiver. The fact that it was Confederate money did not make the payment of itself invalid ; for this court has time and again recognized and upheld payments and collections in Confederate money by fiduciaries as valid, and has been liberal in upholding such payments by fiduciaries in the absence, as in this case, of all proof or suggestion even of mala fades. But in this case, while it may be admitted that Confederate money was considerably depreciated when compared with gold as a standard of value, the report of the commissioner as well as the proof in the cause abundantly show’s that in January and February, 1863, in the county of Franklin, Confederate treasury notes were available in the common usage of business for the payment of all debts, and the purchase of all kinds of property at prices but little, if any, advanced above the prices which had existed before the w’ar. Certainly, I think, it cannot, and ought not to be said that a payment by an administrator of money which, in the community where it w’as paid, had the same purchasing power and availability for payment of debts as a sound currency, was an invalid and *471 void payment, as it was declared to be by the court below'.
I think payment, under the circumstances under which it was made by this administrator, was a full discharge of his intestate’s obligations.
I think that the decree of October, 1863, confirming the report of the receiver that the whole of the purchase money for the “ Hairston tract,” had been fully paid, and directing a deed conveying the title to the heirs of Wash-ton Dickinson, was a final disposition of the case, as far as Dickinson’s administrator and heirs were concerned, and binding upon all the parties (among whom were the appellees) then before the court. It ought not to have been disturbed seven years afterwards, or ever after-wards, but ought to have been a finality.
I am, therefore,.for reversing the decree of the said circuit court, but without prejudice to the appellees to jiersue their remedy, if any they have, against John S. Hale and his sureties, either by an amended bill in this cause, making him and them parties, or by an original bill, as they shall think proper or be advised.
I express no opinion as to whether the receiver, John S. Hale, and his sureties can he held liable to the appellees either for receiving Confederate money, or for the value of that currency at the time it was so received, ■which, he says, perished on his hands. This may be a subject of litigation when the parties are properly before the court. Upon this question I express no opinion, because in the state of the pleadings it would be unnecessary and improper. But I am confidently of opinion that under the facts and circumstances of the case the .administrator and heirs of Washington Dickinson are fully discharged from all liability upon the bonds of their intestate, paid in January and February, 1863, to the *472 receiver' of the court, which payment has been confirmed by the court.
I am, therefore, for reversing the decree of the circuit court of Franklin.
The decree was as follows:
This day came again the parties, by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion for reasons stated in writing and filed with the record, that so much of the decree of the said circuit court as declares the payment to the receiver of the court, John S. Hale, in Confederate treasury note» of the two bonds in controversy, on the 15th January, 1863, and the 1st of February, 1863, by the appellant,, was invalid and void, and all other provisions of said decree carrying out that opinion of said circuit court, is erroneous. Therefore it is decreed and ordered that said decree he reversed and annulled, and that' the appellees (except the heirs at law of Washington Dickinson, deceased, and Charles J. Clement,) pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here.
And this court proceeding to render such decree as the said circuit court ought to have rendered, it is further decreed and ordered that the payments made by the appellant in Confederate money to John S. Hale, the receiver of the court, was a full discharge of tire bonds paid off by, and delivered to, said appellant on the 15th January and 1st of February, 1863, and that therefore the rule awarded against the appellant and the distributees of the estate of Washington Dickinson, deceased, at the May term, 1870, of said circuit court, be discharged, and all proceedings thereunder, so far as *473 they affect the appellant and distributees aforesaid, be quashed and annulled, but without prejudice to the appellees interested in that question, either by amended or original bill, to assert any claim, if any they had, against the receiver, John S. Hale, and his securities.
"Which is ordered to be certified to the said circuit court of Franklin.
Decree reversed.